[984 NYS2d 85]

In the Matter of ALFRED C. JONES (Admitted as ALFRED CHARLES JONES), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, April 16, 2014

### APPEARANCES OF COUNSEL

*Gary L. Casella,* White Plains (*Gloria J. Anderson* and *Antonia Cipollone* of counsel), for petitioner.

*Alfred C. Jones,* New Rochelle, respondent pro se.

### OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Ninth Judicial District served the respondent with a verified petition dated March 28, 2012, containing 10 charges of professional misconduct. Following a hearing, the Special Referee sustained all 10 charges. The Grievance Committee now moves to confirm the report of the Special Referee. In opposition, the respondent asserts that he has an unblemished disciplinary record in 27 years of practice; that he submitted character letters evidencing his excellent reputation and service on the Assigned Counsel Panel of New Rochelle, as well as his pro bono and related community service; that he cooperated with the Grievance Committee; that he has accepted responsibility for his actions and expressed remorse; and that he has taken corrective measures. He asks that any sanction be limited to a public censure.

Charge 1 alleges that the respondent misappropriated funds belonging to another person, which were entrusted to him incident to his practice of law, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15 (a). The respondent represented Bibi N. Gardner, then known as Bibi Baksh, in the sale of her cooperative apartment to Sachiko Brown, as well as in Gardner's subsequent purchase of a condominium apartment from Joanne Volpe. On or about July 22, 2010, the respondent deposited a check from Sachiko Brown, in the amount of $12,500, into his escrow account at Bank of America (hereinafter BOA escrow account), which deposit was identified as the

"contract deposit" for the pending Gardner-to-Brown transaction. On August 30, 2010, the respondent withdrew $3,500 from his BOA escrow account, causing his overall escrow account balance to drop to $9,006.56, well below the $12,500 balance he was required to maintain in connection with the Gardner-to-Brown transaction. That same day, the respondent deposited the $3,500, which he withdrew from his BOA escrow account, into his business account at JP Morgan Chase Bank (hereinafter Chase business account). The balance in the respondent's Chase business account prior to the foregoing deposit was $323.53. The respondent thereupon caused $3,400 to be transferred from his Chase business account to American Express to pay his personal credit card bill. On or about September 9, 2010, the respondent disbursed a check in the amount of $3,500 from his Chase business account, and deposited the check into his BOA escrow account the following day, thereby restoring the $12,500 contract deposit he was required to maintain in connection with the Gardner-to-Brown transaction. The Gardner-to-Brown closing took place on or about November 3, 2010.

Charge 2 alleges that the respondent engaged in conduct involving deceit and misrepresentation, and conduct prejudicial to the administration of justice, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 8.4 (c) and (d). By letter dated and submitted to the Grievance Committee on June 30, 2011, the respondent represented that he transferred $3,500 from his BOA escrow account to his Chase business account as part of a plan to transfer his escrow account to Chase following the Gardner closings and, further, that he immediately transferred the $3,500 back to his BOA escrow account, after he noticed that the Gardner contract of sale restricted him to that account. The respondent repeated this representation to the Grievance Committee in a written submission dated July 26, 2011. In subsequent sworn testimony, the respondent withdrew his prior statements. He testified that he had no excuse for using the escrow funds, and acknowledged that replenishing the funds was no defense.

Charge 3 alleges that the respondent failed to maintain accurate contemporaneous entries of all financial transactions in a ledger book or similar record maintained in the regular course of his practice with respect to his BOA escrow account, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15 (d) (2). At the Gardner-to-Brown closing, the respondent

disbursed check number 1020, from his BOA escrow account, dated November 3, 2010, and payable to Bibi N. Gardner in the amount of $10,000, representing "the contract down payment less post-closing possession escrow." The respondent was required to hold the $2,500 balance of the $12,500 contract deposit in escrow, pursuant to a post-closing possession agreement between Gardner and Brown, whereby Gardner was permitted to remain in the premises until she closed on the condominium purchase from Volpe. The $2,500 was to cover Gardner's per diem rent, and any damage she might cause to the premises during the rental period. Brown's attorney was to notify the respondent of any such damage within three business days after Gardner vacated the premises. If the respondent was not so notified, he was authorized to disburse the $2,500 to Gardner, minus any rent owed to Brown. Gardner vacated the premises on or about November 20, 2010. On November 24, 2010, the third business day after Gardner vacated the premises, the respondent disbursed BOA escrow check number 1021, payable to himself in the amount of $500, as a legal fee for preparing a pre-closing possession agreement between Gardner and Volpe, whereby Gardner would move into the Volpe condominium before the closing took place. The disbursement of BOA escrow check number 1021 reduced the balance, which the respondent was holding in connection with the Gardner-to-Brown transaction, from $2,500 to $2,000. On November 29, 2010, the respondent deposited $300 cash into his BOA escrow account, raising the balance he was holding in connection with the Gardner-to-Brown transaction to $2,300. On November 30, 2010, the respondent disbursed BOA escrow check number 1022, payable to Gardner in the amount of $2,011.48, referenced "down payment balance." The disbursement of BOA escrow check number 1022 reduced the balance the respondent was holding in connection with the Gardner-to-Brown transaction to $288.52. On December 7, 2010, the respondent deposited $200 cash into his BOA escrow account, raising the balance he was holding in connection with the Gardner-to-Brown transaction to $488.52. By BOA escrow check number 1024, dated December 1, 2010, and paid by the bank on December 15, 2010, the respondent disbursed $488.52 to Brown as "post-closing rent," bringing the balance he was holding in connection with the Gardner-to-Brown transaction to zero, and reducing the overall BOA escrow account balance to $6.56. The respondent was unable to produce any records to document the source of the cash he deposited into his escrow account.

Charge 4 alleges that the respondent breached his fiduciary duty, and engaged in conduct adversely reflecting on his fitness as a lawyer, by failing to review records for his escrow account to ensure that he had adequate funds on deposit before making a disbursement, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rules 1.15 (a) and 8.4 (h). On March 30, 2011, the respondent disbursed escrow check number 1025 from his BOA escrow account, in the amount of $25, payable to himself. The check was dishonored because the balance on deposit was only $6.56. In sworn testimony, the respondent admitted that he did not review records for his BOA escrow account, and did not take any steps to determine the balance in the account before he disbursed check number 1025.

Charge 5 alleges that the respondent failed to properly identify his BOA escrow account, as well as the corresponding checks and deposit slips, as "Attorney Special Account," "Attorney Trust Account" or "Attorney Escrow Account," in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.15 (b) (2). The respondent's escrow account at BOA was titled "Alfred C. Jones Atty IOLA Fund." The corresponding checks and deposit tickets were imprinted "Alfred C. Jones, Attorney at Law IOLA."

Charge 6 alleges that the respondent failed to act with diligence and promptness, and neglected one or more legal matters entrusted to him, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.3 (a) and (b). Donna U. Hope retained the respondent on or about February 29, 2008, to represent her regarding a dispute with her contractor, A&M of Yonkers, LLC, whose principal was Leon Fino. The respondent drafted a verified complaint, dated February 23, 2009, naming A&M and Fino as defendants, but never filed the complaint, served the defendants, or took any other action to move the matter forward. The respondent also represented Hope in a law suit against a real estate broker, Albert Bryan, and obtained a small claims judgment against Bryan, dated December 16, 2009, in the amount of $3,651.25. Additionally, the respondent represented Hope in a law suit against a contractor, Naeem Taylor, and obtained a small claims judgment against Taylor, dated May 13, 2010, in the amount of $4,395. The respondent admitted in his answer to Hope's complaint that he had agreed to assist Hope in collecting the judgments against Bryan and Taylor. To that end, he placed a telephone call to the sheriff's office seeking information on how to proceed, but took no further action to collect on the judgments.

Charge 7 alleges that the respondent engaged in conduct involving deceit and misrepresentation, and conduct prejudicial to the administration of justice, by making false statements to the Grievance Committee, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 8.4 (c) and (d). In his written answer to Hope's complaint, under the heading "The lack of progress with respect to [the] dispute with . . . A&M" the respondent stated:

> "I prepared the summons and complaint, but based on the information provided by [Hope,] the contractor could not initially be located to be served. I informed her of this [by letter dated May 7, 2009] . . . It was agreed we should continue to try to locate the contractor while building the case against him and working on [Hope's] numerous other legal matters."

This statement was not true; the respondent never advised Hope that the contractor could not be located to be served and never sent Hope the letter dated May 7, 2009.

In his written answer to Hope's complaint, under the heading "Failure to effect the collection of two judgments I won on her behalf," the respondent stated: "[After] winning her cases, I offered to contact the sheriff's office in an extra-legal effort to assist her in collecting . . . the judgments. However, in one case, the judgment debtor had [no] property whatsoever, and in the other no property was found."

The respondent subsequently admitted in sworn testimony that he had no information regarding the property or bank accounts of either Bryan or Taylor.

The respondent represented Hope regarding the rental of her apartment to Antonio DaSilva. As part of her complaint, Hope alleged that the respondent failed to follow through on her repeated requests that DaSilva be evicted from the apartment for nonpayment of rent. In his written answer to Hope's complaint, under the heading "Failure to effect the eviction of one of her tenants," the respondent stated:

> "Contrary to [Hope's] complaint . . . I did effect the tenant's vacation of the apartment. This was achieved at much difficulty caused by [Hope's] refuse [sic] to adhere to my advice not to enter into side agreements with the tenant. Notwithstanding

> my advice, [Hope] continually accepted payments from the tenant of amounts substantially less that [sic] the rent owned [sic] and entered into written agreements which compromised her ability as landlord to pursue remedies under the lease I had previously negotiated with the tenant."

The respondent's statement that Hope, against his advice, "continually accepted payments from the tenant of amounts substantially less [than] the rent [owed] . . . which compromised her ability as landlord to pursue remedies under the lease" is not true in that Hope acted pursuant to the respondent's advice and accepted payment from the tenant of amounts less than the rent owed because the respondent specifically advised her to do so.

Charge 8 alleges that the respondent failed to maintain complete records regarding a client's retainer fee and failed to render appropriate accounts to the client regarding said fee, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rules 1.15 (c) (3) and 8.4 (h). Pursuant to their agreement, the respondent was to bill Hope at $250 per hour periodically, generally each month, but in no event less frequently than every 60 days. The respondent admits that he kept no records of the time he spent on the Hope matters, that he never sent Hope any invoices, and that he never gave Hope an accounting of her $2,000 retainer fee.

Charge 9 alleges that the respondent engaged in a conflict of interest by entering into business transactions with a client wherein they had differing interests and the client expected him to exercise his professional judgment for the client's protection, without advising the client, in writing, of the desirability of seeking the advice of independent counsel, and without obtaining the client's written informed consent to the essential terms of the transactions, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.8 (a). On or about October 1, 2009, the respondent solicited a loan from his client, Hope, in the amount of $20,000. On or about February 8, 2010, the respondent solicited a second loan from Hope in the amount of $5,000. At the time he solicited both loans, the respondent was representing Hope regarding various legal matters and she expected him to exercise his professional judgment for her protection. The respondent admittedly never discussed with Hope, nor advised her in writing, of the desirability of seeking the advice of independent legal counsel regarding the loans. At the time Hope

lent the money to the respondent, she did not give informed written consent to the essential terms of the transactions and the respondent's role therein.

Charge 10 alleges that the respondent engaged in conduct adversely reflecting on his fitness as a lawyer by failing to repay in full, or in a timely manner, two loans he solicited from a client, and failed to pay any interest on the loans as agreed, in violation of Rules of Professional Conduct (22 NYCRR 1200.0) rule 8.4 (h). At or about the time the respondent solicited the first loan from Hope, he agreed to pay her $2,000 in prepaid interest and gave her check number 4672, in the amount of $2,000, drawn on his Chase business account, referenced "interest on business loan." Hope presented the check and it was paid by the bank on October 13, 2009. Pursuant to their oral agreement, the respondent was to repay the first loan, in the amount of $20,000, in full by December 29, 2009. The respondent gave Hope a $20,000 check, number 4667, drawn on his Chase business account, postdated December 29, 2009, at or about the time he solicited the loan. Sometime on or after December 29, 2009, the respondent told Hope that he did not have the funds on deposit to cover check number 4667, told her not to deposit that check, and gave her four replacement checks, each in the amount of $5,000, drawn on his Bank of America personal account. The checks, number 107, 108, 109, and 110 respectively, were postdated March 31, May 31, July 31, and September 30 of 2010. Hope presented the first of the postdated checks, number 107, to the bank for payment on April 14, 2010, whereupon it was dishonored due to insufficient funds. Soon after check number 107 was dishonored, the respondent and Hope entered into a verbal agreement regarding repayment of the two loans, totaling $25,000. On April 28, 2010, Hope put their agreement in writing, signed it, and provided it to the respondent for his signature. The respondent signed the agreement on May 13, 2010, after modifying the repayment terms from $500 per week to $500 per month. Thereafter, the respondent made six $500 payments in May, June, July, August, October, and December, 2010. He made no further payments after December 2010. Hope subsequently agreed to forgo any interest on the loans, and to use the $2,000 interest that the respondent had prepaid in October 2009 to reduce the amount still owed to her. As a result, the respondent failed to pay any interest on the use of Hope's funds. Sometime thereafter, Hope prepared, and provided to the respondent, a spreadsheet reflecting all payments she had

received from him, wherein the $2,000 prepaid interest was subtracted from the amount owed by the respondent, leaving a combined loan balance of $17,300. On or about September 11, 2011, the respondent paid Hope $17,000 by check number 4930, drawn on his JP Morgan Chase Bank business account, the back of which indicated, "in full satisfaction of loan." The respondent did not have any discussion with Hope regarding the legal meaning of the phrase "in full satisfaction of loan," even though she expected him to exercise his professional judgment for her protection. Said repayment was made more than 20 months after the original due date on the first loan and, accordingly, was not made in a timely manner.

Based upon the evidence adduced, including the respondent's admissions, charges 1 through 10 were properly sustained by the Special Referee. The Grievance Committee's motion to confirm the Special Referee's report is granted. The respondent's opposition and request that any sanction be limited to a public censure are denied.

In determining an appropriate measure of discipline to impose, the Court notes that the respondent's misappropriation of client funds from his attorney escrow account was rectified within a matter of days, and that the client suffered no pecuniary loss. Moreover, to the extent that the respondent made a false and misleading statement to the Grievance Committee by way of explanation, he corrected the false statement under oath. The Court has considered the mitigation propounded by the respondent, as well as the Special Referee's finding that the respondent offered credible assurances that his conduct and professional failures were aberrational and would not be repeated.

Under the totality of the circumstances, the respondent is suspended from the practice of law for a period of two years.

Eng, P.J., Rivera, Skelos, Dillon and Hall, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that the respondent, Alfred C. Jones, admitted as Alfred Charles Jones, is suspended from the practice of law for a period of two years, commencing May 16, 2014, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than November 16, 2015. In such application, the respondent shall furnish satisfactory proof that during that period he: (1) refrained from practicing or attempt-

50 

ing to practice law; (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10); (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (2); and (4) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Alfred C. Jones, admitted as Alfred Charles Jones, shall desist and refrain from (1) practicing law in any form, either as principal, agent, clerk, or employee of another; (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority; (3) giving to another an opinion as to the law or its application or any advice in relation thereto; and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Alfred C. Jones, admitted as Alfred Charles Jones, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).